Filed 12/18/15  P. v. Jasso CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059476 |
| v. | (Super.Ct.No. RIF1301760) |
| JUAN MANUEL JASSO, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jeffrey Prevost, Judge.

Affirmed with directions.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Juan Manuel Jasso, Jr., appeals his conviction on multiple counts of sexual abuse of his daughter, G.J., and his stepdaughter, A.M.[1] He asserts multiple evidentiary errors as well as instructional and sentencing errors. We find no prejudicial error, and we will affirm the judgment. We will, however, remand the matter for further sentencing proceedings.

PROCEDURAL HISTORY

By information filed on April 17, 2103, defendant was charged in counts 1 through 7 with the following offenses against G.J.:

Counts 1 through 6: Lewd and lascivious act by force, violence, duress, menace, and fear of immediate bodily injury on a child under the age of 14. (Pen. Code,[2] § 288, subd. (b)(1).) All offenses allegedly took place between approximately June 2011 and May 2012.

Count 7: Aggravated sexual assault on a child under the age of 14 and seven or more years younger than defendant, by means of rape by force, violence, duress, menace, and fear of immediate bodily injury, in violation of section 261, subdivision (a). (§ 269, subd. (a)(1).)

---

[1] Defendant was charged with offenses against all four of his children but was convicted only as to his daughter and stepdaughter. The information identified defendant's daughter, the victim alleged in counts 1 through 7, as "Jane Doe No. 1 (G.J.)." It identified his stepson, the victim alleged in counts 8 through 12, as "John Doe No. 1 (A.J.)." It identified his stepdaughter, the victim alleged in counts 13 through 16, as "Jane Doe No. 2 (A.M.)." It identified his son, the victim alleged in count 17, as "John Doe No. 2 (J.J.)." The parties refer to them by their initials, and we will do the same.

[2] All further statutory citations refer to the Penal Code unless another code is specified.

The information charged defendant with the following offenses against A.J.:

Counts 8 through 12: Lewd and lascivious act by force, violence, duress, menace, and fear of immediate bodily injury on a child under the age of 14. (§ 288, subd. (b)(1).) All offenses allegedly took place between approximately May 2003 and May 2005.

The information charged defendant with the following offenses against A.M.:

Counts 13 and 14: Aggravated sexual abuse of a child under the age of 14 and seven or more years younger than defendant, based on sexual penetration in violation of section 289, subdivision (a) by force, violence, duress, menace, and fear of immediate bodily injury on a child under the age of 14. (§ 269, subd. (a)(5).) Both offenses allegedly took place between approximately January 2006 and April 2006.

Counts 15 and 16: Lewd and lascivious act by force, violence, duress, menace, and fear of immediate bodily injury on a child under the age of 14. (§ 288, subd. (b)(1).) Both offenses allegedly took place between approximately January 2006 and April 2006.

The information charged defendant with the following offense against J.J.:

Count 17: Willful infliction of cruel and inhuman corporal punishment and injury resulting in a traumatic condition upon a child. (§ 273d, subd. (a).) The offense allegedly took place between approximately November 1 and November 30, 2011.

The information also alleged that in the commission of counts 1 through 16, defendant committed the offenses against multiple victims, within the meaning of section 667.61, subdivision (e)(4).

A jury convicted defendant on counts 1 through 7 and 13 through 16. It found the multiple victim allegation true. The jury was unable to reach verdicts on counts 8

3

through 12 and 17, and the court declared a mistrial as to those counts. At sentencing, the court dismissed those counts in the interest of justice.

Defendant was sentenced to five consecutive terms of 15 years to life and six consecutive terms of 25 years to life. He filed a timely notice of appeal.

FACTS[3]

Defendant began dating A.R. in 1997. A.R. had a daughter, A.M., and a son, A.J. When defendant and A.R. were married in February 1999, A.M. was six and A.J. was three. Defendant and A.R.'s daughter, G.J., was born in August 1999, and their son, J.J., was born in January 2002.

At the end of March 2006, defendant told A.R. that he had disciplined A.M. by "strip[ing] her down naked" and spanking her because she had received an "F" on her report card. A.R. was upset because A.M. was 13 years old and was too old to be spanked naked. The next afternoon, when she came home after school, A.M. told her mother that defendant had made her take off her clothes and spanked her, and that he had "touched" her. A.R. called defendant and confronted him with what A.M. had told her. Defendant arrived home shortly afterward, "in a rage." He yelled and screamed at A.M. and demanded that she take back her accusation. A.M. refused and said she was not lying. Defendant got his gun from his office and pointed it at A.R. and A.M. He pointed it at A.M.'s face and said he should "just . . . kill her right now." He then told A.M. to get out of the house. A.M. left, but later came back into the house. Defendant went into

---

[3] Because defendant was not convicted on the charges pertaining to A.J. and J.J., we will omit the details concerning those alleged offenses.

4

his office and stayed there all night. The next morning, A.R. took all four children and went to her grandparents' house in Coalinga.

A.R. spoke to law enforcement shortly after she and the children moved to Coalinga.[4] She did not let defendant know where they were for two weeks because she was afraid of what he might do to them. However, she eventually relented and allowed him to take the other three children for weekend visits. The other children did not know about defendant's sexual abuse of A.M. or about the gun incident, and they missed him. After about six months, A.R. allowed G.J., A.J. and J.J. to live with defendant in Mira Loma, while she and A.M. stayed in Coalinga. She tried to visit the children every weekend, but it became too expensive. She spoke to them on the phone every night.

A.R. and defendant were divorced in 2007. A.R. moved to Fresno that year. A.M. went to live with her grandmother in Tulare, and later went to live with her grandfather in Montana. At trial, A.M. testified that defendant had spanked her while she was naked on three to five occasions, and that during the spankings, he would touch her "around" her vaginal opening. She did not know whether he used his finger or his penis because she was bent over with her back to him and could not see what he was doing.

In 2012, G.J., who was then 12 years old, asked her mother why she had left defendant. A.R. told her about A.M.'s accusation, which she had not previously shared with the other children. G.J. then disclosed that defendant had been touching her as well.

---

**4** The Fresno County Sheriff's Office interviewed A.M. at the request of the Riverside County Sheriff's Department, which investigated the claim. The investigation was closed when A.M. recanted.

She said that defendant had kissed her "with a tongue" on one occasion but was reluctant to go into further details. A.R. asked G.J. to write down all the things defendant did to her. G.J. did so, and gave A.R. the writing the next day. A.R. reported G.J.'s allegations to the Riverside County Sheriff's Department.

At trial, G.J. described five incidents in which defendant sexually abused her. The first incident, during the summer between G.J.'s sixth and seventh grade school years, defendant made G.J. sit on his lap, facing him, with her legs straddling him. He rubbed her back, put his hands on her breasts and kissed her all over her face. During the second incident, that same summer, defendant was lying on the couch when G.J. bent over to kiss him goodnight. He pulled her down on top of him and started rubbing her back and her breasts under her tank top. When she said she needed to get her eye medication, he let her get up. He then bent her over and pushed his crotch against her bottom. She could feel his erection. The third incident occurred right after G.J. began seventh grade. When she showed him a mosquito or spider bite on her arm, defendant thrust his forearm between her legs and grabbed her bottom, pulling her closer to him. The fourth incident also occurred shortly after G.J. had begun seventh grade. Defendant got into bed with her and put his arms around her. He rubbed her back, bottom and breasts under her clothes, kissed her neck, and then began rubbing her crotch over her clothes. He asked if it felt good. He continued rubbing all over her body, then finally left. The fifth incident occurred in November 2011, also during G.J.'s seventh grade school year. Defendant again got into bed with her, kissing and rubbing her body. He turned her onto her back,

6

rubbed her crotch and then pulled down her shorts and underwear and had sexual intercourse with her.

A.R. and the children testified that defendant was a strict disciplinarian and that they lived in fear of his temper. He was mercurial and "could flip on a dime," changing in an instant from being "fine" to being angry. The entire family "walk[ed] on eggshells" around defendant. When defendant became angry, the children would scatter, because they knew someone "was going to get it." If defendant came home in a bad mood, the children would go to their rooms immediately to avoid getting in trouble for something. He was often "mad" and "mean." He would verbally abuse the children—for example, calling A.M. his "black slave" and "bitch" and making G.J. feel "worthless" or as though she was just a burden to him—and would slap, punch or spank them for any misconduct. If one child got into trouble, defendant would spank them all. He would hit them with a belt, sometimes while they were naked, and would often make them get on their knees and face the wall. He once threw a chair at A.J. and hit him with it. He once threatened G.J. that he would make her blind if she rolled her eyes at him, and on another occasion, verbally abused her, hit her on the head and told her he should leave her "dead in a ditch somewhere" because she was rude to his girlfriend. He called her a "retard" and told her he did not want her to be a "slut" like her mother, who had had her first two children out of wedlock.

7

<u>LEGAL ANALYSIS</u>

1.

IT WAS NOT ERROR TO EXCLUDE EVIDENCE OF A PRIOR INCONSISTENT

STATEMENT BY WITNESS DEBRA NEAL

Defendant contends that the trial court deprived him of his due process right to present a defense when it improperly sustained hearsay objections to testimony concerning a prior inconsistent statement by a prosecution witness concerning G.J.

The issue arose as follows: Detective Boyd, the investigator in this case, referred G.J. to Debra Neal, a registered nurse, for a sexual assault exam. Neal testified for the prosecution that her examination did not show any scarring to G.J.'s hymenal ring. She testified that her examination was consistent with sexual abuse, based on the history G.J. gave. She testified that it is rare to find any evidence of injuries when the examination is performed several months after penetration reportedly occurred. She examined G.J. in June 2012; the incident in which G.J. reported that defendant had sexual intercourse with her occurred in November 2011. On cross-examination, defense counsel asked Neal if she had spoken to Detective Boyd, the investigator on the case, after her examination. Neal first denied having spoken to Boyd after examining G.J., and then stated that she did not recall whether she had. Defense counsel did not ask her about any statement she might have made to Boyd after the examination. Defense counsel later called Boyd as a defense witness. He attempted to ask Boyd whether, after the exam, Neal reported to him that G.J. was a virgin. He also attempted to ask Boyd whether he had testified to that

8

effect at the preliminary hearing. The court sustained hearsay objections to both questions.

Out of the presence of the jury, defense counsel read to the court Boyd's preliminary hearing testimony, in which Boyd stated that after the examination, Neal had called him to discuss the findings. Boyd stated that Neal told him that the findings were "normal" and that G.J. was a virgin. Although counsel characterized his reading of Boyd's testimony as an offer of proof, he did not specify either what it was intended to prove or the grounds upon which Boyd's testimony would be admissible. The court again sustained the prosecutor's objection that Boyd's prior testimony was hearsay.

In his motion for a new trial, defense counsel asserted that it was error to exclude Boyd's prior testimony because the entire case as to G.J. would be undermined "if [G.J.] was not raped, because if [G.J.] lied about the rape she should not be believed on anything she said." The trial court denied the motion.

Defendant now contends that his attorney's questioning of Boyd was an attempt to elicit testimony of a prior inconsistent statement by Ms. Neal and that his attorney's response to the hearsay objections and his new trial motion were sufficient to apprise the court that he was relying on the prior inconsistent statement exception to the hearsay rule as the basis of admissibility, or that if counsel did not sufficiently so apprise the court, defendant was denied his constitutional right to the effective assistance of counsel.

We will assume, without deciding, that defense counsel adequately apprised the court that his purpose in questioning Boyd was to elicit a prior inconsistent statement by Neal because even if Boyd's testimony might otherwise have been admissible for that

9

purpose, it was not admissible because defense counsel did not comply with the requirements of Evidence Code section 770.

Evidence Code section 1235 provides that evidence of an inconsistent statement is not made inadmissible by the hearsay rule if the statement is inconsistent with the witness's testimony at the trial or hearing and "is offered in compliance with Section 770." Evidence Code section 770 provides: "Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action."

When Neal testified, defense counsel did not ask her about the statement allegedly attributed to her at the preliminary hearing by Detective Boyd. Rather, he merely asked her if she spoke to Boyd after she rendered her report. She first denied having done so and then stated that she did not recall. She was given no opportunity to explain or deny any statement. After redirect examination, the parties agreed that Neal could be excused. Defense counsel did not ask that she be subject to recall. The opportunity to explain or deny a prior inconsistent statement is the sine qua non of admissibility under Evidence Code section 770. (*People v. Alexander* (2010) 49 Cal.4th 846, 908-909, 910.) Accordingly, because defense counsel did not ask Neal about her purported statement before Neal was excused, defendant's later efforts to examine Boyd about Neal's

10

statements to him, or about his prior testimony concerning her statements to him, were barred by the hearsay rule.

Defendant also contends that if counsel failed to adequately apprise the court of the grounds for admissibility of Boyd's testimony, he was deprived of his right to the effective assistance of counsel. As we have stated, even if counsel had asserted to the court that Boyd's testimony was admissible as evidence of a prior inconsistent statement by Neal, the evidence would not have been admissible because counsel failed to comply with Evidence Code section 770. The question, then, is whether counsel's failure to comply with Evidence Code section 770 by asking Neal whether she told Boyd that G.J. was a virgin constituted ineffective assistance by depriving defendant of potentially exculpatory evidence.

To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to show both that his trial attorney's representation fell below prevailing objective standards of competence and that he was prejudiced by the attorney's act or omission. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692, 693-694.) An appellate court need not decide whether counsel's performance was deficient if the defendant fails to demonstrate prejudice. (*People v. Boyette* (2002) 29 Cal.4th 381, 430-431; *Strickland v. Washington*, at p. 700.)

In his reply brief, defendant contends that he was prejudiced by the exclusion of Boyd's testimony. Rather than summarize his argument, we quote it in full: "Respondent next argues . . . that any error was non-prejudicial, based on the premise that Ms. Neal's statement to Detective Boyd that G.J. was a virgin was not inconsistent

11

with her trial testimony that her findings were 'normal.' [Citation.] This argument ignores Ms. Neal's testimony that because healing occurs very quickly after the cells of the hymen of a young girl have been 'disrupted' by sexual intercourse, even if there has been bleeding, an examiner would be unable to discern that disruption in the cells six months later. [Citation.] The jury almost certainly would have understood this testimony to indicate that even if there had been penetration, Ms. Neal would have been unable to see signs of that by the time she performed her exam.

"That understanding is much different from what Ms. Neal told Detective Boyd. Her statement to Boyd that G.J. was a virgin indicated her belief that she would have been able to tell if penetration had occurred, and her conclusion from her examination was that no penetration had occurred. Thus, Ms. Neal's statement to Detective Boyd directly contradicted her testimony at trial that she would not have been able to determine whether or not G.J. was a virgin.

"The contradiction in Ms. Neal's statements was information the jury should have been allowed to hear, in order to assess the credibility of both Ms. Neal and G.J. The excluded evidence was especially important as to the charge of rape in count 7.[5] In her interviews in May and June of 2012 with the forensic examiner and with Ms. Neal, G.J. seemed to indicate she believed there had been no penetration, or at least that she was unsure [citation], although she did also speak of the bleeding she experienced. [Citation.]

_____

[5] In count 7, defendant was charged with aggravated sexual assault of a child in violation of section 269, subdivision (a)(1), based on rape by force in violation of section 261, subdivision (a).

12

However, roughly a year later, at trial, she stated with certainty that appellant had placed his penis in her vagina. [Citation.]

"Thus, G.J.'s statements, alone, raised a significant question as to exactly what had occurred. Ms. Neal's statement to Detective Boyd was important to the jury's full consideration of that issue." (Bold and italics omitted.)

While full vaginal penetration is not necessary to prove a violation of Penal Code section 269, subdivision (a)(1) based on forcible rape,[6] Neal's statement to Boyd that G.J. was a virgin might have had significant impeachment value, for the reasons defendant describes. We cannot make that determination, however, because defense counsel's failure to comply with Evidence Code section 770 leaves us with an incomplete record. We cannot speculate as to what Neal might have said if she had been asked to explain that statement. Upon being confronted with Boyd's preliminary hearing testimony, she might, for example, have recalled having spoken to him but denied having used the word "virgin." Or, she might have provided an explanation that addressed the apparent contradiction. Because we cannot determine on the basis of the record before us whether trial counsel's failure to comply with the requirements for admissibility of the prior statement was prejudicial, we must conclude that defendant has failed to meet his burden on appeal. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 700.)

---

[6] For purposes of rape, "Any sexual penetration, however slight, is sufficient to complete the crime." (§ 263.) This includes penetration of the external female genitalia. (*People v. Quintana* (2001) 89 Cal.App.4th 1362, 1365-1372; *People v. Karsai* (1982) 131 Cal.App.3d 224, 232, overruled on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8.)

## THE COURT'S ERRONEOUS EXCLUSION OF EVIDENCE PERTAINING TO G.J.'S STATE OF MIND WAS NOT PREJUDICIAL

The prosecution called two friends of G.J. to testify that G.J. informed them that defendant had been abusing her sexually. Direct examination of both witnesses was limited to G.J.'s complaint of sexual abuse. On cross-examination of the first witness, defense counsel asked her if G.J. had complained to her that defendant made her cook, clean and take care of her brother or that he treated her brother better than he treated her. The court sustained the prosecutor's hearsay objections. Defense counsel asked to make a record; the court stated that he could address the issue later, outside the presence of the jury.

Out of the presence of the jury, defense counsel stated that he wanted to ask the first witness whether G.J. had complained to her about defendant treating her brother better than he treated her, if he did not let G.J. wear the kind of clothing she wanted to wear or let her get her nails done the way she wanted, and if defendant's girlfriend was mean to G.J. He wanted to ask those questions in furtherance of his position that G.J. wanted to go live with her mother for reasons unrelated to sexual abuse. He admitted that he did not know how the first witness would answer those questions.[7] He stated that the statements he hoped to elicit had nothing to do with the fresh complaint, but were offered

---

[7] This statement is a bit puzzling, since in the motion for new trial he provided copies of statements that both witnesses had given to police, in which they described G.J.'s complaints along those lines. He stated that he received them in discovery.

for the nonhearsay purpose of showing G.J.'s state of mind. The court stated that its prior rulings on the hearsay objections would stand. Defendant did not attempt to ask the second witness any similar questions, nor did he make an offer of proof concerning what he expected her to say.

Defendant raised the issue again in his motion for new trial. He informed the court that the statements he had hoped to elicit from the two witnesses were contained in reports of interviews with the witnesses which had been provided in discovery. He stated that he wanted to introduce them as inconsistent statements. In denying the motion, the court said, "I agree with the People that the evidence of fresh complaint is admitted [solely] with respect to the making of the complaint only, and the reference to any inconsistent statements is beyond the scope of the admission of evidence for fresh complaint."

Defendant now contends that this was error, and that the evidence he sought to elicit was admissible for the nonhearsay purpose of showing G.J.'s state of mind, i.e., that she disliked the way her father treated her in general and fabricated the sexual abuse allegations to persuade her mother to allow her to come live with her.

Under the fresh complaint doctrine, "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the

trier of fact's determination as to whether the offense occurred." (*People v. Brown* (1994) 8 Cal.4th 746, 749-750, 762-763 (*Brown*).)

Here, the prosecutor argued that the fresh complaint doctrine limits questioning of the witnesses. She cited *Brown*, *supra*, 8 Cal.4th 746, for its holding that questioning must be limited "to the fact that a complaint was made and to the circumstances surrounding the making of the complaint." (*Id.* at p. 762.) The trial court apparently agreed that because both witnesses were called by the prosecution as fresh complaint witnesses, defendant was barred from asking them any questions about other statements G.J. might have made to them. This is incorrect. As *Brown* explains, that rule is for the protection of the defendant: "So long as the evidence that is admitted is carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose, admission of such relevant evidence should assist in enlightening the jury without improperly prejudicing the defendant." (*Ibid*.) The defendant, however, is not so constrained: "[U]nlike the prosecution, which generally cannot introduce or rely upon the details or substantive content of the victim's complaint, a defendant who believes that the contents of the victim's extrajudicial complaint may be useful to impeach the victim's in-court testimony (or other aspects of the prosecution's case) generally is free to introduce and rely upon the details of such a complaint as a prior inconsistent statement." (*Ibid.*)

The fresh complaint doctrine is a red herring in this case, however. Defendant was not seeking to question the first witness about details of G.J.'s disclosure to her of

16

defendant's sexual abuse in order to impeach G.J. Rather, he was seeking to question her about *other* complaints G.J. had made about her father's treatment of her, in order to allow the jury to infer that G.J. had made up the sexual abuse allegations as a means of escaping from defendant's controlling and abusive behavior. Contrary to the trial court's ruling, those statements were not hearsay. Hearsay is a statement made other than while testifying as a witness, which statement is offered in the trial to prove the truth of the matter asserted in the statement. (Evid. Code, § 1200, subd. (a).) A statement offered as circumstantial evidence of a person's state of mind is not hearsay if it is offered not to prove the truth of the matter asserted but to explain the declarant's conduct. (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 591.) The out-of-court statements the defense sought to elicit in this case were not offered for their truth but for the nonhearsay purpose of showing G.J.'s state of mind, i.e., that she was desperate to escape from defendant's household for reasons unrelated to sexual abuse.[8] Accordingly, it was error to exclude them on that basis.[9]

---

[8] Contrary to defendant's contention in his motion for new trial, the complaints G.J. made to both witnesses were not inconsistent statements; they did not contradict her complaints of sexual abuse but were simply additional complaints on different subjects.

[9] It is arguable that because defendant's questions to the first witness were not directed toward the circumstances of her disclosure of sexual abuse, they were outside the scope of direct examination and objectionable on that basis. (*People v. Foss* (2007) 155 Cal.App.4th 113, 127.) The prosecutor did not object on that ground, however. Even if she had, however, defendant could have called both witnesses as his own witnesses to testify to G.J.'s complaints. The trial court's ruling on the hearsay objections rendered it futile to do so, however.

The error was harmless, however. Prejudice from the erroneous admission or exclusion of evidence is reviewed under the standard of *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1325.) Under that standard, the conviction will be reversed only if it is reasonably probable that an outcome more favorable to the defendant would have resulted in the absence of the error. (*Ibid.*)[10] The record is replete with evidence that defendant was a harsh disciplinarian with a hair-trigger temper who chastised his children in an abusive manner for the smallest infractions, calling them names and demeaning them and frequently slapping, punching and spanking them. G.J. testified that she was afraid her father would beat her for any number of innocuous acts, such as texting her mother or talking too much about her mother. She had wanted to live with her mother since she was eight years old, long before the molestation began. The additional evidence that G.J. complained to the first witness, i.e., her father made her do chores, favored her brother, and would not let her get her nails done or buy the kind of clothes she wanted to wear, would have added little in the way of a basis for arguing that G.J. fabricated her claim of sexual abuse as a ploy to escape from defendant. Accordingly, defendant was not prejudiced by its exclusion.

---

[10] Defendant contends that the court's exclusion of this evidence amounted to a refusal to allow him to present a defense, in violation of his constitutional right to due process. We disagree. Where a ruling does not entirely preclude a defendant from presenting a particular defense but merely rejects certain evidence concerning the defense, no constitutional violation occurs. (*People v. Bradford*, *supra*, 15 Cal.4th at p. 1325.) As we discuss, there was a great deal of evidence that would have permitted the jury to conclude that G.J. fabricated her allegations of sexual abuse in order to escape from defendant's household. The exclusion of additional evidence does not amount to a constitutional violation. (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1317-1318.)

18

## 3.

## DEFENDANT WAS NOT PREJUDICED BY THE ERRONEOUS EXCLUSION

## OF A.M.'S 2006 STATEMENT TO POLICE

A.M. first reported that defendant sexually abused her in 2006. An investigation ensued, but no charges were filed. Defendant wished to have A.M.'s statement to Andrea McCormick, a Fresno sheriff's detective who interviewed her in 2006, admitted into evidence. He subpoenaed the recording of the interview and McCormick's report. McCormick testified that she had sent a copy of her report and the tape to the Riverside County Sheriff's Department. Her department did not keep a copy of the tape. The Riverside County Sheriff's Department destroyed the tape sometime after the investigation was closed. McCormick testified that her report, which she wrote while listening to the audio recording, accurately reflected what A.M. had said. However, she had no independent recollection of what A.M. had said during the interview, and reading the report did not refresh her recollection.

Defendant then made an offer of proof as to what McCormick would say if "allowed to testify what [A.M.] told her." According to defendant's offer of proof, the report stated that A.M. had told McCormick that she did not like living in "LA" and wanted to get away, so she "made up this one lie that [defendant] was touching me and stuff like that so we could just move." The court sustained the prosecutor's hearsay objections. Defendant now contends that A.M.'s statement to McCormick was admissible as a past recollection recorded pursuant to Evidence Code section 1237, and

19

that because A.M.'s statement to McCormick was inconsistent with her trial testimony, the exclusion was prejudicial.

The Attorney General contends that the issue is waived because defense counsel did not state on the record any basis for the admission of the contents of McCormick's report.[11] Again, however, defendant asserts that if the issue was not preserved for review, he received constitutionally ineffective assistance of trial counsel. Accordingly, we will address the merits of the argument.

Evidence Code section 1237 permits evidence of a witness's past statement "if the statement would have been admissible if made by him while testifying, the statement concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately, and the statement is contained in a writing which: [¶] (1) [w]as made at a time when the fact recorded in the writing actually occurred or was fresh in the witness'[s] memory; [¶] (2) [w]as made (i) by the witness himself or under his direction or (ii) by some other person for the purpose of recording the witness'[s] statement at the time it was made; [¶] (3) [i]s offered after the witness testifies that the statement he made was a true statement of such fact; and [¶] (4) [i]s offered after the writing is authenticated as an accurate record of the statement." (Evid. Code, § 1237, subd. (a).) If the court concludes that the statement should come in under subdivision (a),

---

[11] In the motion for a new trial, it was asserted that "the evidence of the facts in the report" was admissible under Evidence Code section 1237, as a past recollection recorded. The basis for admission of excluded evidence must be brought to the trial court's attention at the time it was offered, however. (*People v. Ervine* (2009) 47 Cal.4th 745, 783.)

20

the writing may be read into evidence, but the writing itself may not be received into evidence unless offered by an adverse party. (Evid. Code, § 1237, subd. (b).)

Defendant contends that McCormick's report was admissible to show that A.M. made statements which were inconsistent with her testimony at trial. He argues that McCormick's report is admissible under Evidence Code section 1237 as McCormick's past recollection recorded, i.e., McCormick's recollection of what A.M. said to her.

Defendant relies on *People v. Sam* (1969) 71 Cal.2d 194. In that case, in a footnote, our Supreme Court stated: "As Officer Meraz did not recall defendant's exact statement but did acknowledge the correctness of the police report, defendant's statement was properly admitted as past recollection recorded. (Evid. Code, § 1237.) The People now assert that if the report of defendant's statement was admissible on this basis, the report of [witness] Tubby's statement should likewise have been admissible. This contention completely overlooks the fact that both statements involved *multiple* hearsay objections. The past recollection recorded exception only alleviated the fact that Officer Meraz' written report was hearsay as to the statements therein *by* Officer Meraz, and in effect allowed the report to 'testify' in place of the officer who wrote it. This still left the statements *to* the officer by the parties as hearsay declarations. No specific reason was given for the admission of defendant's statement, and it is not in issue on appeal. *Tubby's statement to Meraz was admitted as a prior inconsistent statement. For the latter to have been past recollection recorded as to Tubby's words to Officer Meraz as well as the officer's words in the report, Tubby as well as Meraz would have had to acknowledge the truth and accuracy of the written statement. This Tubby was unable or*

21

*unwilling to do. Therefore the report could properly 'testify' in place of Meraz, but not in place of Tubby.*" (*People v. Sam*, at p. 208, fn. 3, last italics added.)

We find this footnote more than a little opaque, and it is far from clear that it supports defendant's position. Nevertheless, defendant's position as to the admissibility of McCormick's report[12] is fully consistent with Evidence Code section 1237. As noted above, McCormick testified that her report, which she wrote while listening to the audio recording, accurately reflected what A.M. had said. However, she had no independent recollection of what A.M. had said during the interview, and reading the report did not refresh her recollection. Accordingly, the report qualifies as past recollection recorded as to what A.M. told McCormick. However, because the inconsistencies between A.M.'s testimony and her statement to McCormick were in fact presented to the jury, the exclusion of McCormick's report was not prejudicial.

When A.M. testified on direct, she acknowledged that she had retracted her accusation at some point, apparently in 2006, telling an unidentified officer that the sexual abuse she had alleged did not happen, and that she had made it up. She said that she retracted her accusation because she did not want to talk about it anymore and did not want people thinking about her "that way." At trial, she admitted that in 2006, she wanted to get out of defendant's house, but she maintained that she told the truth when she told her mother that defendant was touching her. She said everyone in the family knew how badly she was being treated without reference to any sexual abuse and that she

---

[12] By admissible, we mean that it could have been read into evidence, not that the report itself could be admitted into evidence. (See Evid. Code, § 1237, subd. (b).)

22

did not need "to make up something all stupid to get out of the house." On cross-examination, she testified that when she spoke to Detective Boyd in 2012, she told Boyd that the reason she had told other officers in 2006 that the sexual abuse did not happen was that defendant pointed a gun at her and she was in fear. She stated that this was one reason she recanted, and that the other reason was that she "wanted to get out of there," apparently referring to the interview with McCormick. She then testified that she did not recall speaking to McCormick in Fresno in 2006. However, she acknowledged that she "probably did" tell a female detective in Fresno that she wanted to live near her father and that she was unhappy living in southern California. She testified that she did, in fact, tell "that detective in May 2006" that she lied when she said defendant had touched her in a bad way. When she was asked how McCormick responded to her statement that she had lied because she wanted to get away and live near her father, A.M. responded, "Nope. I don't remember talking to her really." A.M. also admitted that the first time she told any officer about the gun was when she spoke to Boyd in 2012. She had previously testified that she thought she had told the police about the gun back in 2006. Her testimony was sufficient to enable the defense to contrast her statement in 2006 with her testimony at trial and to argue that she was not being truthful about the reasons for her recantation and that her recantation was actually the truth. (Defense counsel did not explicitly make that argument, but he could have done so.)

The only part of A.M.'s statement to McCormick that was not put before the jury is the concluding phrase of A.M.'s statement, expressing satisfaction that her ploy was successful: "[I lied] so we could just move and ya we did." Although we understand

23

why defendant would have liked the jury to hear that portion of her statement, we do not agree that it added anything to the substance of A.M.'s admission that she lied in order to persuade her mother to move away, nor do we agree that a more favorable outcome was reasonably probable if that portion of A.M.'s statement had been admitted into evidence. Because A.M.'s prior statements to McCormick were sufficiently presented to the jury to permit the jury to infer that she lied about defendant having touched her, defendant has failed to demonstrate that there is a reasonable probability of a more favorable outcome if McCormick's report had been admitted into evidence. (*People v. Bradford*, *supra*, 15 Cal.4th at p. 1325; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

4.

## THE COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING

## DEPUTY CORTEZ'S REPORT

Defendant contends that the court deprived him of his constitutional right to present a defense when it excluded Deputy Cortez's report of statements made by A.R. in 2006. He contends that the statements recorded in Cortez's report were inconsistent with A.R.'s trial testimony, and that the report should have been admitted as past recollection recorded.

The issue arose as follows: A.R., the mother of the alleged victims, testified on direct that on the night when defendant allegedly spanked A.M. and touched her inappropriately, she came home with G.J. from a Girl Scout meeting and found that all the other children were already in bed. She asked defendant what was going on, and he told her that he had disciplined A.M. by "strip[ing] her down naked" and spanking her.

24

When A.M. came home from school the next day, A.M. told her that defendant had made her bend over and touch her toes and that he had "touched" her. A.R. called defendant and confronted him with A.M.'s accusation. Defendant came home in a rage and took out a gun, pointed it at A.R. and A.M., and demanded that A.M. admit that she was lying. About two days later, after she had taken the children to Coalinga, she telephoned the Riverside County Sheriff's Department to report the incident. She did not "clearly" recall a telephone conversation with Deputy Cortez, and reading his report did not refresh her recollection. After reading his report, she stated, "I just don't recall saying this."

On cross-examination, A.R. testified that she did not recall ever having told law enforcement about defendant pointing a gun during the confrontation over the spanking incident. She said she did not recall what she told "any of them" about the incident.

In his case-in-chief, defendant wanted to call Deputy Cortez to testify about statements A.R. made to him that were inconsistent with her trial testimony. He wanted to admit Cortez's report under Evidence Code section 1237 as past recollection recorded. The prosecutor requested an Evidence Code section 402 hearing to ascertain what Cortez's testimony would be. Cortez testified that he did not recall the events reported in his 2006 report of his interview with A.R. or the statements attributed to her in the report, and that reading the report did not refresh his recollection. He testified that he customarily writes reports within a few days after an interview or incident, and that it is his practice to report truthfully and accurately. After reading his report, he testified that it reflected that A.R. said that she saw the spanking and that she did not have any facts which showed that defendant touched A.M. "in an appropriate [*sic*] manner." The report

25

showed that A.R. stated that there was no sexual touching. The report showed that A.R. did not make any statement about a gun being used in the incident.

The trial court sustained the prosecutor's objection that Cortez's report did not qualify as past recollection recorded. In doing so, the court stated that the foundation for admission under Evidence Code section 1237 was not met, in part because Cortez could not vouch for the accuracy of the statement: "He doesn't know if it's accurate or not. He can't say that he recorded it within 20 minutes of the conversation or within 24 hours."

In his argument on appeal, defendant does not address this finding. It is, however, dispositive of the issue. "[A] trial court has broad discretion to determine whether a party has established the foundational requirements for a hearsay exception [citation] and '[a] ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto[.]' (Evid. Code, § 402, subd. (c).) We review the trial court's conclusions regarding foundational facts for substantial evidence. [Citation.] We review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if '"the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."' [Citation.]" (*People v. DeHoyos* (2013) 57 Cal.4th 79, 132.)

A past recollection recorded is admissible only if the trial court concludes that the declarant has reliably established the accuracy of the recorded statement. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1293.) It is within the trial court's discretion to determine whether the "circumstances surrounding the statement" provide a sufficient basis for concluding that the report is accurate. (*Id.* at pp. 1293-1294.) Here, Cortez

26

testified in very general terms about his practices with respect to writing reports. He had no recollection whatsoever of writing this report. He was not asked how soon after speaking to A.R. he wrote the report, or whether he took notes while speaking to her and transcribed his notes, or whether he wrote the report several days later based solely on his recollection of the conversation. There was no other evidence concerning the circumstances surrounding the report which might have established its accuracy. We see no abuse of discretion in the trial court's conclusion that Cortez's undisputed and unaugmented testimony did not establish reliably that the report was accurate. Accordingly, the court did not abuse its discretion in excluding the contents of Cortez's report.

5.

## THE EVIDENCE DOES NOT SUPPORT AN INSTRUCTION

## ON ATTEMPTED RAPE

Defendant contends that the trial court had a sua sponte duty to instruct on attempted rape as a lesser included offense of aggravated sexual abuse of a child by rape, as alleged in count 7.

A trial court errs if it "fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) Such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is substantial enough to merit consideration by the jury. (*Ibid.*) "Substantial evidence" in this context

is evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*Ibid.*)

Attempted rape has two elements: the specific intent to commit rape and a direct but ineffectual act done toward its commission. (*People v. Lee* (2011) 51 Cal.4th 620, 633.) "'The act must be a direct movement beyond preparation that would have accomplished the crime of rape if not frustrated by extraneous circumstances.' [Citation.]" (*Ibid.*)

Defendant contends that the instruction on attempted rape was supported by G.J.'s statement to investigators that she was not sure defendant had actually penetrated her and her statement denying that he had raped her, in contrast to her trial testimony that he put his penis into her vagina and moved back and forth for 15 minutes, and that she saw blood on her body afterward. She acknowledged that she had initially thought the blood might be menstrual blood, but she later concluded that it was not. He contends that the evidence "leave[s] the question open as to whether penetration occurred." The evidence does leave that question open, but that is not the question posed by his assertion that the court should have instructed on the lesser included offense. The question is whether there is any evidence that defendant attempted to penetrate G.J. but was frustrated in his attempt to do so. Defendant does not cite any such evidence. In its absence, the evidence presented to the jury supports either the conclusion that he did penetrate her or the conclusion that he did not, but it does not support the conclusion that he specifically intended to penetrate her and attempted to do so but failed.

28

6.

SUBSTANTIAL EVIDENCE SUPPORTS THE FINDING THAT THE LEWD ACTS

AGAINST G.J. WERE COMMITTED BY DURESS

Counts 1 through 6 alleged that defendant committed lewd acts on G.J. in violation of section 288, subdivision (b)(1).  That statute penalizes such acts if they are committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."  Defendant contends that there was insufficient evidence that the acts were committed by any of those means.

We review a claim of insufficient evidence under the substantial evidence rule. Substantial evidence is evidence which is "reasonable, credible, and of solid value," such that "a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  In determining whether such evidence exists, we review the entire record, examining it in the light most favorable to the judgment.  (*Ibid*.)  We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence'" to support the judgment. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The prosecutor relied upon five separate incidents to prove the six counts.[13] She argued that all of the acts were perpetrated by the use of fear or duress. "Duress," as used in section 288, subdivision (b)(1), means "''a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'" [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 246.) Here, the record as a whole supports the inference that in each instance, G.J. acquiesced out of fear of a violent reprisal if she resisted. G.J. testified that in the first incident, when defendant told her to sit on his lap, she complied because she "didn't want to get in trouble." She said the same thing with respect to the second incident—she never told him "no" because she "didn't want to get in trouble." She did not expressly state that she acquiesced in any of the other acts for that reason, but her testimony made it clear that she did not willingly participate in any of them. The record supports the inference that G.J. had good reason to be afraid of resisting. As we have discussed elsewhere, the entire family lived in fear of defendant's temper and the violent punishments and vicious verbal and emotional abuse he would mete out for the smallest infraction. G.J. testified that defendant frequently slapped or hit her and that she was afraid to text her mother or even talk about her mother because she thought defendant would beat "the crap" out of her if she did. She also testified that she

---

**13** The prosecutor informed the jury that there were multiple acts committed on each occasion, such as multiple acts of fondling G.J.'s breasts or genital area, each of which could form the basis of an individual count.

30

was afraid she "would be dead or close to that" if defendant found the journal in which she described the abuse other than the molestation. A reasonable 12-year-old of ordinary susceptibilities would clearly not wish to provoke a man such as defendant by resisting his sexual touching. Accordingly, the verdicts are supported by substantial evidence.

7.

THE TRIAL COURT'S FAILURE TO INSTRUCT ON NONFORCIBLE

LEWD ACTS WAS NOT PREJUDICIAL

Defendant argues as to counts 1 through 6 that the trial court had a sua sponte duty to instruct the jury on the lesser offense of nonforcible lewd acts, within the meaning of section 288, subdivision (a).

Even if we assume that the evidence supported a verdict on the lesser offense, we find no prejudice from the omission. Failure to instruct on a lesser included offense is reviewed for prejudice under the standard of *People v. Watson*, *supra*, 46 Cal.2d 818. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165.) Under that standard, in a noncapital case, the error is reversible only if there is a reasonable probability that the error affected the outcome. (*Ibid*.) Given the overwhelming evidence that defendant generally terrorized G.J. and her siblings and that G.J. acquiesced in defendant's sexual touching out of fear of reprisals, we are not persuaded that it is reasonably likely that the jury would have elected to convict defendant of the lesser offense if it had been given that option.

31

8.

THE OMISSION OF A UNANIMITY INSTRUCTION ON

COUNTS 13 AND 14 WAS HARMLESS

By agreement of the parties, the court instructed the jury with CALCRIM No. 3501 as to all counts except counts 13 and 14. In pertinent part, the instruction read:

"The People have presented evidence of more than one act to prove the defendant committed these offenses. You must not find defendant guilty unless you all agree that the People have proved the defendant committed at least one of these acts and you all agree upon which act he committed. Or, you all agree the defendant[14] [*sic*] proved the defendant committed all the acts alleged to have occurred during this time period and have proved the defendant committed at least the number of offenses charged." Defendant contends that the instruction should have included counts 13 and 14 because A.M., the victim alleged in those counts, testified to multiple incidents which the jury could have found to be the basis of the two counts charged. He contends that the error requires reversal of his conviction on those counts.

We agree that the instruction should have included counts 13 and 14.

"In a criminal case, a jury verdict must be unanimous. [Citations.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution

_____

**14** The written instruction provided to the jury correctly stated that the jury must find that the People proved that defendant committed all the acts alleged.

32

must elect among the crimes or the court must require the jury to agree on the same criminal act. [Citations.]" (*Ibid.*, italics omitted.) Alternatively, in cases involving sexual molestation of children where the prosecution relies on generic evidence describing (1) the kind of acts committed, (2) the number of acts committed with sufficient certainty to support the alleged counts, and (3) the general time period in which the acts occurred, due process allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim. (*People v. Jones* (1990) 51 Cal.3d 294, 321-322.)

Here, counts 13 and 14 pertained to A.M. Both counts alleged sexual penetration by force, in violation of section 269, subdivision (a)(5). The prosecutor told the jury that to prove those two counts, she was relying on A.M.'s testimony that there were up to five incidents during which penetration occurred. Accordingly, the jury should have been instructed that it must unanimously agree on the particular incident it relied on for each count or must unanimously agree that defendant committed all of the acts A.M. described.

The omission, however, was not prejudicial. There is a split of authority as to whether the omission of a required unanimity instruction is reviewed under the harmless error standard of *Chapman v. California* (1967) 386 U.S. 18 or the miscarriage of justice standard of *People v. Watson*, *supra*, 46 Cal.2d 818. (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 576 [Fourth Dist., Div. Two].) We concur with prior decisions of this court which hold that the error violates federal constitutional law, as stated in *People v. Hernandez*. (*Id*. at pp. 576-577.)

33

Under the *Chapman* test, reversal is not required if an error is harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) Here, although A.M. testified to more than two acts of sexual penetration, the record shows beyond a reasonable doubt that the jury unanimously agreed either that defendant committed all of the acts A.M. described, or that it unanimously agreed that defendant committed two particular acts.

A.M. described the first incident in detail, but did not describe the other incidents with any specificity. She did not recall how many times the spankings and penetration took place, but she was sure it was three times, and maybe as many as five. However, she explained that the first incident occurred when she was in the sixth grade and the final one occurred when she was in the seventh grade. A.R. confirmed that when A.M. told her of the abuse after the final incident, A.M. was in the seventh grade. Because the evidence unequivocally described two specific instances—the first and the last—we are convinced beyond a reasonable doubt that no rational juror would have rejected A.M.'s testimony as to either the first or last incident but would have believed that the incidents that she could not recall with any particularity did occur. Accordingly, the verdicts would have been unanimous as to the first and last incidents, and the omission of the instruction was harmless beyond a reasonable doubt.

9.

THE CUMULATIVE ERROR DOCTRINE DOES NOT APPLY

Defendant contends that even if the first eight errors he asserted were not individually prejudicial, cumulatively they deprived him of a fair trial.

34

We found no error with respect to defendant's arguments 1, 4, 5 and 6. Accordingly, those arguments do not provide any basis for concluding that cumulative error occurred.

With respect to arguments 2 and 3, we concluded that the erroneous exclusion of potentially exculpatory testimony was not prejudicial because other testimony brought the same evidence to the jury's attention. We are not persuaded that those two errors have any cumulative effect in combination with the instructional errors we found nonprejudicial in defendant's arguments 7 and 8.

10.

SENTENCING ISSUES

Defendant contends that the trial court erred in imposing consecutive terms on all counts of conviction, pursuant to section 667.61. He contends that the evidence does not support the court's implied finding that at least several violations of section 288, subdivision (b)(1) as to G.J. took place on separate occasions within the meaning of section 667.6, subdivision (d). He also contends that the evidence does not support the court's implied finding that the violations of section 288, subdivision (b)(1) and section 269, subdivision (a) as to A.M. took place on separate occasions within the meaning of section 667.6, subdivision (d). Contrary to defendant's argument, however, the court did not rely on separate occasions to impose consecutive sentences. Rather, it relied on the jury's finding that there were multiple victims. At oral argument, defendant argued that consecutive sentences were not available on some counts, under the version

35

of the applicable statute that was in effect on the date of his offenses.  We will address that contention.

*Section 667.61*

As to most counts, defendant was sentenced pursuant to section 667.61.[15]  Section 667.61 has been amended several times.  As currently in effect, it provides for a specified sentence for each offense listed in subdivision (c).  Those offenses include violations of section 288, subdivision (b).  (§ 667.61, subd. (c)(4).)  The statute mandates a sentence of 15 years to life for each such offense if any one of several circumstances specified in subdivision (e) is present.  (§ 667.61, subd. (b).)  If, however, the victim of an offense specified in subdivision (c) is under the age of 14 and one of the special circumstances is present, the mandatory sentence is 25 years to life.  (§ 667.61, subd. (j)(2).)  One of the specified circumstances is that the defendant committed an offense specified in subdivision (c) against more than one victim.  (§ 667.61, subds. (b), (e)(4).)  Further, section 667.61, subdivision (i) provides that "the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6."

---

[15]  As we discuss below, section 667.61 does not apply to counts 7, 13 and 14.

The jury returned a finding that defendant did commit such crimes against more than one victim, and both victims were under the age of 14 when the crimes occurred. Accordingly, assuming that the current version of the statute applies, imposition of consecutive terms of 25 years to life on each such count—counts 1 through 6 and counts 15 and 16—is mandatory, without reference to whether the crimes were committed on separate occasions. (*People v. Huber* (1986) 181 Cal.App.3d 601, 631-632.)

The version of section 667.61 containing the provisions of subdivisions (i) concerning mandatory consecutive sentences first went into effect on September 20, 2006. (Stats. 2006, ch. 337, § 33.) The version containing the provisions of (j)(2), providing for a term of 25 years to life for convictions involving multiple victims, first went into effect on September 9, 2010. (Stats. 2010, ch. 219, § 16.) G.J. testified that the first incident of abuse took place during the summer of 2011. Accordingly, the court properly imposed consecutive terms of 25 years to life on counts 1 through 6.

The evidence showed, however, that all of the crimes committed against A.M. took place in or before March 2006.[16] To the extent that more recent versions of section 667.61 impose a greater punishment than the version of the statute that was in effect in March 2006, defendant is entitled to be sentenced under the earlier law. (See *John L. v. Superior Court* (2004) 33 Cal.4th 158, 181-182 [under both state and federal constitutions, ex post facto violation occurs where laws setting the length of a prison

---

[16] A.R. testified that the last incident involving A.M., which precipitated her move to Coalinga with all of the children, occurred toward the end of March 2006.

37

sentence are revised after the crime to contain either a longer mandatory minimum term or a higher presumptive sentencing range].)

The version of section 667.61 that was in effect between September 28, 1998 and September 19, 2006[17] provided that "a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 15 years . . . ." (Former § 667.61, subd. (b) (1998).) Violations of section 288 were qualifying offenses. (Former § 667.61, subd. (c)(4) (1998).) A qualifying circumstance under subdivision (e) was conviction in the current case of an offense specified in subdivision (c) against more than one victim. (Former § 667.61, subd. (e)(5) (1998).) Subdivision (g) of former section 667.61 provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified in subdivision (a) or (b) shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." (Stats. 1998, ch. 936, § 9, eff. Sept. 28, 1998.) Thus, the consecutive sentencing provision did not apply to counts 15 and 16 on the basis of separate victims because A.M. was the sole victim in each count. However, former section 667.6, subdivision (d), as in effect at the time of defendant's offenses, did provide

---

**17** (See Stats. 1998, ch. 936, § 9, eff. Sept. 28, 1998; Stats. 2006, ch. 337, § 33, eff. Sept. 20, 2006.)

38

for full consecutive sentences for violations of section 288, subdivision (b) "if the crimes involve separate victims or involve the same victim on separate occasions."[18] Accordingly, even though the trial court erred in sentencing defendant to consecutive terms on counts 15 and 16 under the current version of section 667.61, the sentence was nevertheless mandated by former section 667.6, subdivision (d).[19]

*Section 269*

On counts 7, 13 and 14, defendant was convicted of aggravated sexual assault on a child, in violation of section 269, subdivision (a). As the trial court recognized, section 269 contains its own sentencing scheme. Section 269, subdivision (b), provides for a mandatory term of 15 years to life for all convictions under that statute. Section

---

[18] Former section 667.6, subdivision (d), provided: "A full, separate, and consecutive term shall be served for each violation of Section 220, other than an assault with intent to commit mayhem, provided that the person has been convicted previously of violating Section 220 for an offense other than an assault with intent to commit mayhem, paragraph (2), (3), (6), or (7) of subdivision (a) of Section 261, paragraph (1), (4), or (5) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, subdivision (a) of Section 289, of committing sodomy in violation of subdivision (k) of Section 286, of committing oral copulation in violation of subdivision (k) of Section 288a, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person if the crimes involve separate victims or involve the same victim on separate occasions." (Stats. 2002, ch. 787, § 16.)

[19] We note, too, that the term specified in the version of section 667.61 that was in effect at the time of the offenses against A.M. was life in prison with a minimum of 15 years prior to eligibility for parole. (Former § 667.61 (1998), subd. (b).) This is not the same as the term of 15 years to life provided for in the current version of section 667.61 and imposed by the trial court (*People v. Jefferson* (1999) 21 Cal.4th 86, 92-93), and it is arguably a longer sentence than 15 years to life. The Attorney General has not raised any issue pertaining to propriety of imposing an arguably lesser term than the term mandated by former section 667.61, however.

269, subdivision (c) provides for mandatory consecutive sentences "for each offense that results in a conviction under this section if the crimes involve separate victims." The court imposed consecutive terms of 15 years to life on all three counts pursuant to that statute.[20] Subdivision (c), however, was enacted in 2006 and became effective September 20, 2006. (Stats. 2006, ch. 337, § 6) Accordingly, while the current version of the statute applies to count 7, involving G.J., it does not apply to counts 13 and 14, involving A.M.

In *People v. Figueroa* (2008) 162 Cal.App.4th 95 (Fourth Dist., Div. Two), this court addressed the same issue. The defendant was convicted of two counts of aggravated sexual assault on a minor in violation of section 269 by committing rape (§ 261, subd. (a)(2)) on a child under the age of 14 and 10 or more years younger than the defendant. The acts charged were committed before the enactment of section 269, subdivision (c), and the defendant contended that the trial court had the discretion to impose concurrent rather than consecutive terms. (*Figueroa*, at p. 98.) We held that because the underlying offense of rape in violation of section 261, subdivision (a)(2), is a crime enumerated in section 667.6, and because the defendant committed the acts on the same victim on separate occasions, consecutive terms were mandated by section 667.6, subdivision (d). (*Figueroa*, at pp. 98-100.) The same reasoning applies here. The crime underlying the aggravated sexual assault alleged in count 7 was rape, in violation of section 261, subdivision (a)(2), and the crime underlying the aggravated sexual assaults

_____

[20] Count 7 is the principal count; all other counts run consecutive to it.

40

in counts 13 and 14 was sexual penetration in violation of section 289, subdivision (a), by force, violence, duress, menace, and fear of immediate bodily injury. Both of the underlying crimes are crimes enumerated in the versions of section 667.6, subdivision (d), as effective on the dates of the offenses. Accordingly, because the crimes were committed against separate victims, consecutive terms were mandatory.[21] (Former § 667.6, subd. (d).)

Following oral argument, we requested supplemental briefing concerning sentencing issues raised at oral argument. In his supplemental brief, defendant contends that section 654 bars unstayed sentences for two of counts 13 through 16. Section 654 provides, in part, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Defendant contends that multiple punishment is precluded based on the prosecutor's argument that "the same conduct" at "the same time" supported both the sexual penetration counts (counts 13 and 14) and the forcible lewd and lascivious acts counts (counts 15 and 16). However, the act of spanking a naked child can violate section 288, subdivision (b)(1) if it is done with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the

---

[21] In the supplemental briefing we requested following oral argument, defendant continues to contend that consecutive sentencing was not mandatory because there was insufficient evidence to support the trial court's supposed finding that the offenses occurred on separate occasions. We reiterate that the basis for consecutive sentencing is the jury's finding that the crimes were committed against two victims.

41

defendant or the child. (§ 288, subd. (a).) Accordingly, despite the prosecutor's argument, the evidence supported a finding of two separate crimes on each occasion. "[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6.) If the rule were otherwise, "the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act." (*Id.* at p. 347.) Defendant provides no basis for concluding that a spanking that violates section 288, subdivision (b), and sexual penetration are not separate criminal acts subject to separate punishment, even if committed on a single occasion. Furthermore, A.M. testified that defendant engaged in spanking and sexually penetrating her on as many as five separate occasions. Section 654 does not preclude separate punishment for each such incident.

11.

REMAND IS REQUIRED TO PERMIT THE TRIAL COURT TO CLARIFY THE AMOUNT OF THE FINES IMPOSED UNDER SECTIONS 1204.2 AND 1202.45

Section 1202.4 provides for imposition of a mandatory restitution fine for all felony convictions, in an amount ranging from $240 to $10,000. Section 1202.45 provides that the court must impose and stay a parole revocation fine in the same amount imposed pursuant to section 1202.4.

Here, the trial court initially stated that it was imposing fines in the amount of $2,500 pursuant to those statutes. At the conclusion of the sentencing hearing, in response to a question posed by defendant, the court stated, "Restitution fine is $2,250." The sentencing minutes, however, state that the fines are imposed in the amount of $10,000 each, while the abstract of judgment states that the fine imposed pursuant to section 1202.4 is $10,000 and that no fine was imposed pursuant to section 1202.45. The parties concur that we should remand the matter to the trial court with directions to clarify the amount of fines the court intended to impose and to issue corrected sentencing minutes and a corrected abstract of judgment reflecting the amounts imposed. We agree, and we shall do so.

## DISPOSITION

The cause is remanded to the superior court for further sentencing proceedings, as stated below. The judgment is otherwise affirmed.

The superior court is ordered to determine the amount of the restitution and parole revocation fines to be imposed pursuant to Penal Code sections 1202.4 and 1202.45 and ensure that the amounts imposed are correctly reflected in the sentencing documents. The court is further ordered to correct the abstract of judgment to reflect that sentence is imposed pursuant to sections 667.6, 667.61 and 269. Finally, the court is ordered to issue

corrected sentencing minutes and a corrected abstract of judgment, and to provide a copy of those documents to the parties and to the Department of Corrections and Rehabilitation within 30 days after this opinion becomes final.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

KING
J.

MILLER
J.